## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA

| | | |
|---|---|---|
| VISION WARRIORS CHURCH, INC., | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| | ) | |
| vs. | ) | |
| | ) | CIVIL ACTION 1:19-cv-3205-(MHC) |
| CHEROKEE COUNTY, | ) | |
| GEORGIA, and HARRY | ) | JURY DEMAND |
| JOHNSTON, STEVE WEST, | ) | |
| RAY GUNNIN, BENNY CARTER, | ) | |
| and COREY RAGSDALE, both | ) | |
| individually and in their official | ) | |
| capacities as members of the | ) | |
| CHEROKEE COUNTY BOARD | ) | |
| OF COMMISSIONERS, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| MICHAEL CHAPMAN, both | ) | |
| individually and in his official | ) | |
| capacity as Cherokee County | ) | |
| Zoning Manager | ) | |
| | ) | |
| Defendants. | ) | |

## FIRST AMENDED COMPLAINT

## NATURE OF ACTION

1.       Vision Warriors Church, Inc. is a faith-based nonprofit organization. Plaintiff brings this action for declaratory and injunctive relief and also seeks compensatory damages based on the Defendants' deliberate and purposeful deprivation of Plaintiff's rights under the United States Constitution, the Fair Housing Act, 42 U.S.C. § 3601 *et seq.* ("FHA"), the Americans With Disabilities Act, 42 U.S.C. § 12132, *et seq.* ("ADA"), the Religious Land Use and Institutionalized Persons Act of 2000, 42 U.S.C. § 2000cc, *et seq.* ("RLUIPA"), and the Constitution of the State of Georgia.

## JURISDICTION AND VENUE

2.       This Court has jurisdiction over all federal claims in the Complaint arising under the United States Constitution pursuant to 28 U.S.C. §§ 1331 and 1343, 42 U.S.C. 3601 *et seq.*, and 42 U.S.C. 2000cc *et seq.*, which confers original jurisdiction on United States Courts in suits to redress the deprivation of rights, privileges, and immunities, as stated herein. This Court has jurisdiction over the request for declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202, and 42 U.S.C. §§ 3615 and 12133, and Rule 57 of the Federal Rules of Civil Procedure.

3.     This Court has jurisdiction over all state law claims in the Complaint arising under the United States Constitution pursuant to 28 U.S.C. §§ 1367 and 1441, which confers supplemental jurisdiction on United States Courts over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

4.     Venue lies in this District pursuant to 28 U.S.C. § 1391. Each Defendant and the Plaintiff are located in this District. All events giving rise to this action occurred in this District.

## PARTIES

5.     Plaintiff, Vision Warriors Church, Inc. (hereinafter "Vision Warriors"), is a Georgia non-profit corporation with IRC Section 510(c)(3) recognition, and operates as a faith-based ministry for men recovering from drug addiction.

6.     Defendant, Cherokee County, is a municipal corporation, incorporated, legal subdivision of the State of Georgia, created and existing by virtue of the Constitution and laws of Georgia, and is empowered by the State to act through its governing body, its officials, employees, and official bodies. The Defendant is a recipient of federal funds.

3

7.     Defendant Harry Johnston is the Chairman of the Board of Commissioners (hereinafter "Board"), and is responsible for the administration and enforcement of the zoning code, and is sued individually and in his official capacity for acts and omissions that occurred in connection with duties performed on behalf of the County.

8.     Defendant Steven West serves on the Board and is the Commissioner for District 1 and is responsible for the administration and enforcement of the zoning code, and is sued individually and in his official capacity for acts and omissions that occurred in connection with duties performed on behalf of the County.

9.     Defendant Ray Gunnin serves on the Board and is the Commissioner for District 2 and is responsible for the administration and enforcement of the zoning code, and is sued individually and in his official capacity for acts and omissions that occurred in connection with duties performed on behalf of the County.

10.     Defendant Benny Carter serves on the Board and is the Commissioner for District 3 and is responsible for the administration and enforcement of the zoning code, and is sued individually and in his official capacity for acts and omissions that occurred in connection with duties performed on behalf of the County.

11.     Defendant Corey Ragsdale serves on the Board and is the Commissioner for District 4 and is responsible for the administration and enforcement of the zoning code, and is sued individually and in his official capacity for acts and omissions that occurred in connection with duties performed on behalf of the County.

12.     Defendant Michael Chapman serves as the Cherokee County Zoning Administrator and is responsible for the administration and enforcement of the zoning code, and is sued individually and in his official capacity for acts and omissions that occurred in connection with duties performed on behalf of the County.

## STATEMENT OF FACTS

13.     Vision Warriors is a non-profit ministry that seeks to provide a faith-based community for men recovering from addiction that focuses on accountability and transparency in an effort to help men to be better Disciples of Christ, fathers, husbands, leaders, and friends. In fulfillment of this mission, Vision Warriors provides support services to men striving to overcome addiction through a residential program, weekly services, and faith-based meetings.

14.     Kirk Driskell is the founder of Vision Warriors and has been working with men in recovery for more than twenty-four years.

15.     As Vision Warriors has explained to the County on numerous occasions, Vision Warriors is neither a detox facility, nor a facility for court-ordered residents.

16.     Vision Warriors does not provide medical treatment on the Property for drug and/or alcohol addiction.

17.     Vision Warriors has been operating for more than seven (7) years to help men break free from the destructive cycle of addiction. In that time, Vision Warriors has hosted over 500 recovery meetings, gatherings and Bible studies and has helped nearly 200 men find job placement and maintain nearly a 100% employment rate.

18.     Vision Warriors is certified by the Georgia Association for Recovery Residents (GARR) as a National Alliance for Recovery Residence (NARR) Level 2 recovery residence. GARR is a program that seeks "to create, monitor, evaluate and improve standards and measures of quality for recovery residences in Georgia." GARR is committed to establishing quality standards to provide the most effective services and recovery care to meet the expanding needs its members.

19.     NARR Level 2 recovery residences, often called sober homes or sober living homes, are alcohol and drug free recovery housing that use house standards,

rules and peer accountability to maintain safe, healthy, and structured living environments.

20.    Vision Warriors and GARR affirm the necessity of a continuum of care to adequately address the total needs of those struggling to overcome addiction for the long-term and maintain sobriety. For many, a short-term or long-term residential program is an integral and essential part of that care.

21.    Most of the residents and members receiving help from Vision Warriors come directly from short or long-term treatment facilities. Long-term sobriety is greatly enhanced when coupled with after care and the type of communal living offered by Vision Warriors.

22.    On December 13, 2017, Vision Warriors purchased approximately 6.491 acres, identified in the records of Defendant Cherokee County as Tax Map 02N04, Parcels 314 & 318, commonly known as 1709 Old Country Place, Woodstock, Georgia 30188 ("the Property"). The purchase price of the Property was for $750,000.00.

23.    Approximately 5.348 acres of the Property is zoned to the R-80 (Residential) zoning district and the northernmost 1.143 acres of the Property is zoned to the R-20 (Residential) zoning district.

24.     The Property, previously owned by Tom and Jewel Young, was used as a church and a residence and retreat for missionaries and families in need, known as Happy Acres Mission Transit Center ("Happy Acres"), from 1982 until the Property was acquired by Vision Warriors in December of 2017.

25.     Happy Acres utilized and operated on the Property the following with the Defendant County's knowledge and approval: (1) the Youngs' personal residence which also consisted of an efficiency apartment on the lower level, (2) a worship/assembly hall, (3) dormitories with kitchen facilities, (4) an auto repair shop, (5) a woodworking shop and warehouse, and (6) a storage building.

26.     The Youngs, through Happy Acres ministry, housed missionaries in their personal residence. The worship/assembly hall and dormitory were also used to house missionaries and their families and as a place for classes and worship. The auto repair shop was used by Mr. Young to make vehicle repairs, and to buy and sell vehicles to generate revenue to support the Happy Acres ministry. The warehouse building was used to store donated goods, to ship materials, and to manufacture wood crates – additional means for generating revenue to support the Happy Acres ministry.

27.     As Jewel Young attests in an affidavit furnished to Defendant County, the number of missionaries who stayed at Happy Acres at any given time varied over the years. On average, four families stayed on the Property at a time. Some months, however, Happy Acres hosted up to six families on the Property.

28.     Happy Acres also hosted retreats and conferences, during which anywhere between thirty and fifty people would reside on the Property.

29.     The church and dormitory building contains seven rooms, in addition to a bunk room and three efficiency apartments.

30.     Happy Acres did not charge rent to the missionaries who stayed on the Property, but did request donations from them and others to help defray operating costs.

31.     In early 2017, and in preparation for selling the Property to an organization with a similar use in mind, Jewel Young and her son, Tori Young, sought zoning confirmation from Defendant County's then-Zoning Administrator, Vicki Taylor Lee, that a similar use by the purchaser of the Property would be permitted.

32.    On or about February 6, 2017, Zoning Administrator Lee issued a "Certification of Zoning for property located at 1709 Old Country Place, Woodstock, GA PL2017-050," which provided, in part, as follows:

> There appears to be four (4) buildings on the parcel, a primary home, a detached garage, a dormitory and a chapel. As a legal non-conforming use, you may continue to house guests in the dormitory for short periods of time. You cannot expand the use to something different or increase the number of people served.

33.    Approximately one month later, on or about March 8, 2017, Zoning Administrator Lee issued a second, more detailed zoning certification entitled, "Certification of Zoning for property located at 1709 Old Country Place, Woodstock, GA PL2017-050," and acknowledged the previously existing warehouse and attached a list of temporary shelters and uses classified under NAICS Code No. 624221.

34.    On July 19, 2017, Tori Young (son of Jewel and Tom Young) and Kirk Driskell of Vision Warriors met with Zoning Administrator Lee and one other official or employee of Defendant County to discuss Vision Warriors' proposed acquisition of the Property and to confirm, once again, that its proposed use as a temporary home for men recovering from drug and alcohol addiction would be

permitted. During this meeting, Zoning Administrator Lee watched the videos available on Vision Warriors' website.

35.     Following their July 19, 2017 meeting, on July 31, 2017 and August 4, 2017, Tori Young exchanged emails with Zoning Administrator Lee to obtain written confirmation that Vision Warriors' intended use – *i.e.* to house men (not families and/or only women) recovering from drug and alcohol addiction – is consistent with Zoning Administrator Lee's earlier Certification of Zoning letter issued on March 8, 2017, approving a non-conforming use.

36.     In this email, Tori Young specifically noted that Vision Warriors is "geared around men and this (the NAICS Codes referenced in the March 8, 2017 letter) references only women related use. Could it be more specific to Vision Warriors?"

37.     To this, Administrator Lee responded, "It also says homeless shelters without gender. I am the interpreter of land use and I assure you this meets Vision Warriors use."

38.     On August 4, 2017, Zoning Administrator Lee issue a third zoning certification for the Property.

39.     Section 14.1 of the Zoning Ordinance provides that, "[e]xcept as otherwise provided in these regulations the Zoning Administrator shall administer, interpret and enforce this Ordinance."

40.     On November 22, 2017, Kirk Driskell contacted Administrator Lee directly to inform her that Vision Warriors would be purchasing the Property and inquired as to what would need to be done by Vision Warriors to obtain a business license.

41.     On November 22, 2017, Administrator Lee responded to Mr. Driskell's email and informed him he is "good to go." She explained that "[w]hat will happen first is a Tenant Occupancy Change were [sic] the Fire Marshall and Building Inspector come out to verify the required life-safety items." She concluded her email with "[b]est wishes for your endeavor."

42.     When each of these certifications were issued to Happy Acres and Vision Warriors, Administrator Lee had authority to interpret the Cherokee County Zoning Ordinance.

43.      Upon information and belief, other Defendant County officials and employees were fully aware of Administrator Lee's determination and did not take

any action to challenge this determination a until it became aware of the type of people Vision Warriors provides assistance to.

44.     Based on the assurances provided by Defendant County's Zoning Administrator and the Certification of Zoning Approval, Vision Warriors purchased the Property on December 13, 2017.

45.     Vision Warriors immediately began using the Property in the same manner as Happy Acres and for which building permits and zoning approval had lawfully been obtained as follows:

- Dormitory/Sanctuary: Used to house residents, prepare and provide meals to residents and supporters and host regular religious services and faith-based meetings
- Car Shop: A free-standing building and fully operational car repair facility which provides jobs and funding to support the ministry
- Woodshop: Used to create products, hone skills and provide revenue to support the ministry.
- Warehouse/Logistics Center: Used to accept, store and distribute donations provided to the ministry.
- Front Parcel Home: Used by Ms. Young as a personal residence and to host members and staff.

46.     Following Vision Warriors' acquisition of the Property, Mrs. Jewel Young continued to reside on the Property as she had for more than forty years prior.

47.    Vision Warriors currently hosts weekly services on the Property during which time anywhere from 40-80 people in the community gather to engage in praise and worship, prayer and bible study.

48.    While notice of these weekly services are not published or advertised to the public, the services are open to any member of the community needing help and/or wanting to provide support for the ministry and its members.

49.    Vision Warriors houses between approximately twenty and thirty male residents on the Property – all who are struggling to overcome drug addiction for the long-term and all who desire to restore family relationships and their relationship with the Lord.

50.    Vision Warriors does not charge rent to its residents and resident members are not required to sign a lease. It does, however, ask residents to contribute $600 monthly to help the ministry offset all of its costs. A resident is not turned away due to inability to pay.

51.    Vision Warriors operates with the strong belief that requiring resident members to contribute something toward room and board encourages a strong work ethic and a sense of accomplishment. Financial stability is crucial to lasting recovery.

52.     All residents are required to adhere to house rules and guidelines outlined in a membership agreement.

53.     In addition to the residence and dormitory/sanctuary, Vision Warriors utilizes the pre-existing car and wood shop to provide a vocational training ministry for its residents which, in turn, sets its members up for success and provides employment opportunities.

54.     Every single activity on the Property is related to and operated with the goal of helping members build confidence in their roles as men working for God and to maintain individual financial stability.

55.     Visions Warriors' use of the Property is practically identical to that of Happy Acres which was never challenged by the County during the decades it operated. The only difference is the type of residents served by Vision Warriors – *i.e.*, disabled individuals struggling to overcome addition.

56.     At the time Vision Warriors purchased the Property and learned that it would need an occupancy permit, a dormitory was an "open use" in all residential zoned areas – a use permitted by right without additional specialized requirements.

57.     Pursuant to the NAICS Code 721310 – the code specifically cited in the County's Permitted Uses Table – dormitories and rooming and boarding houses are

identified under the same category and are described as "establishments primarily engaged in operating rooming and boarding houses and similar facilities . . . These establishments provide temporary or longer-term accommodations, which, for the period of occupancy, may serve as a principal residence. These establishments also may provide complementary services, such as housekeeping, meals and laundry services."

58.    In April 2018, Vision Warriors contacted Defendant County to obtain a Business License to operate on the Property and was instructed that it only needed to obtain a Tenant Occupancy Permit.

59.    On April 20, 2018, Vision Warriors sought and Defendant County issued a Tenant Occupancy Change Permit for the Property, and Vision Warriors scheduled a date for inspection by the Defendant County's Fire Marshal.

60.    Following issuance of the Tenant Occupancy Change Permit and scheduling of the Fire Marshal's inspection, Kirk Driskell received a call from the Fire Marshal.

61.    During this phone call, the Fire Marshal quizzed Kirk Driskell about Vision Warriors' website, the organization's mission, and the organization's facebook page and certain facebook posts made by supporters of the organization.

These inquiries were entirely unrelated to, and unnecessary for, the Fire Marshal to conduct an inspection of the Property.

62.     During this call, the Fire Marshal also expressed cynicism regarding Vision Warriors' use of the Property and insisted that Defendant County's Planner, Margaret Stallings join the call to further inquire about the organization's proposed use of the Property.

63.     Upon information and belief, this phone call and the conversation that ensued constitutes a departure from normal practice and procedures of Defendant County.

64.     Following this phone call, and on the day the Fire Marshal was scheduled to inspect the Property, the Fire Marshal abruptly canceled the inspection.

65.     Upon information and belief, the Fire Marshall was instructed by Defendant County's Planning and Zoning Department not to move forward with the inspection.

66.     Following the events described above, approximately seven County officials and/or employees showed up unannounced at the Property,  including Defendant  County's Fire Marshal, Fire Chief, Assistant Fire Chief and certain

members of Defendant's Planning and Zoning Department, and proceeded with an inspection of the Property.

67.    Despite the fact that the site visit had been coordinated in advance, neither Kirk Driskell nor any staff or member of Vision Warriors received any advance notice of this visit.

68.    Notwithstanding the lack of notice for the visit, Vision Warriors allowed Defendant County officials and/or employees to inspect the entire Property.

69.    The only concerns raised by the Fire Marshal during this visit were the height of the fire extinguishers in the dormitory building, and the need to clear boxes out for an open walkway in the warehouse building.

70.    In April 2018, Defendant County's Board of Commissioners voted to amend its Zoning Ordinance to remove dormitories as an "open use" in all residential zoning districts and to limit dormitories by special use permit only in all residential zoning districts.

71.    A "special use" is permitted "upon compliance with Article 18.4 Special Use Permits of this Ordinance and the grant of a Special Use Permit by the Board of Commissioners."

72.     Upon information and belief, Defendants sought to amend the zoning ordinance to remove dormitories as an "open use" in all residential areas following, and in part due to, neighborhood opposition to Vision Warriors' ministry on the Property.

73.     Prior to enactment of the amendment, Vision Warriors had been using the Property with zoning approval by Defendant County for more than four months and, thus, Vision Warriors' use of the Property should be considered a legal non-conforming use (*i.e.*, "grandfathered use") and be allowed to continue.

74.     Section 13.3 of the Zoning Ordinance provides that "[t]he lawful use of any building, structures, land or sign existing at the time of the enactment or amendment of this Ordinance may be continued, even though such use does not conform with the provisions of this Ordinance . . . ."

75.     On or about April 24, 2018, Defendant County notified Vision Warriors that a dormitory use may not be permitted as of right.

76.     Thereafter, Vision Warriors met with Fire Marshal, Chad Arp, Planning Director, Jeff Watkins and County Planner, Margaret Stallings, to discuss Vision Warriors' ministry and use of the Property. During the meeting, these County

officials admitted to Vision Warriors that neighbors had expressed opposition regarding the type of residents Vision Warriors ministers to.

77.    On May 9, 2018, and at the request of Defendant County, Vision Warriors provided a statement of its operations, as well as an *ante litem* notice.

78.    On May 23, 2018, neighbors circulated an email and a petition to neighbors with the subject line, "We all have a huge neighborhood problem!" The email contained false information and unfounded concerns that Property values would decrease and children would be unsafe because of Vision Warriors' use of the Property.

79.    The email was circulated by Richard Jordan, a member of the Cherokee Citizens for Community Preservation, and contained the County's official seal on the email giving the appearance that the communication was one sanctioned by the County.

80.    Shortly thereafter, on May 30, 2018, Vision Warriors was asked by the Defendants, by and through counsel, to discount the false claims contained in Mr. Jordan's email.

81.    These same unfounded concerns have been expressed by neighbors on numerous occasions to Defendants individually and at public hearings held by Defendant County involving or relating to Vision Warriors' zoning applications.

82.    On June 2, 2018, Vision Warriors provided supplemental information regarding its operations via email to Defendant County's attorney.

83.    On June 12, 2018, Defendants issued a letter via their counsel notifying Vision Warriors that it was "engaging in an unpermitted use of the Property such that the Tenant Occupancy Change Permit was issued in error." The letter ordered Vision Warriors that "offending uses must be discontinued."

84.    This letter also communicated the Defendants' position that "the principal use of the property is a temporary shelter, which is prohibited in residential zoning districts. In addition, we have determined that the church is not being used as a church as alleged."

85.    On July 11, 2018, Vision Warriors appealed Defendant County's determination referenced in the June 12, 2018 letter to the Zoning Board of Appeals and to the Board of Commissioners. This administrative appeal is identified as Cherokee County Appeal No. 18-10-0001A (the "Cherokee County Appeal No. 18-10-0001A").

86.    On or about July 11, 2018, and in the Memorandum in Support of Vision Warriors' appeal, Defendants were notified that Vision Warriors is an organization entitled to protection under federal law, specifically the Fair Housing Act and Americans With Disabilities Act.

87.    On or about July 11, 2018, Defendants received fair warning that their continued attempts to interfere with Vision Warriors' previously approved use of the Property violated Vision Warriors' constitutional rights and constituted violations of clearly established federal law.

88.    Under the Zoning Ordinance, a family is defined as "[a]n individual, or two or more persons related by blood, marriage, adoption or guardianship, or a group of not more than four unrelated persons, occupying a single dwelling unit. . . . The term 'family' does not include any organization or institutional group."

89.    On or about August 9, 2018, the Defendant County Zoning Manager, Michael Chapman, affirmed and supplemented the Defendant County's Board of Commissioners' prior determination of June 12, 2018.

90.    On September 12, 2018, Vision Warriors attended a meeting with Defendant County officials and employees regarding its intended use and the filing of zoning and special use permit applications.

91.    On November 6, 2018, the Defendant County's Board of Commissioners held a work session to discuss Vision Warriors' appeal of the Zoning Administrator's decision to revoke Vision Warriors' zoning approval and tenant occupancy change permit and, upon request by Vision Warriors, decided to continue appeal proceedings until the two land use applications to be submitted by Vision Warriors were submitted and decided.

92.    On November 20, 2018, Vision Warriors submitted its two land use applications in an attempt to propose and obtain a reasonable accommodation to the County's revocation of zoning approval and application of its newly amended zoning ordinance to deny Vision Warriors zoning approval.

93.    The first land use request was for a special use permit to allow a dormitory and religious institution, which if approved would allow all of Vision Warriors' above-referenced uses of the Property without changing the underlying R-20 & R-80 zoning categories.

94.    The second land use request submitted by Vision Warriors was for rezoning of the Property to the Office/Industrial District (OI) to allow for all of the above uses.

95.     Prior to this hearing, Defendants were, once again, notified that their actions in denying Vision Warriors' application for a special use permit and/or in the alternative, application for rezoning, would violate federal laws, including but not limited to the FHA, ADA and RLUIPA.

96.     On March 5, 2019, a public hearing was held by Defendant County's Planning Commission regarding Vision Warriors' land use applications, as required by the Cherokee County Zoning Ordinance.

97.     At this hearing, the current Zoning Manager of the County, Michael Chapman, presented information regarding the current zoning, surrounding uses, land use compliance and economic use of the Property.

98.     During his presentation, Mr. Chapman confirmed the Zoning Ordinance's descriptions of the R-80 and R-20 residentially-zoned areas in which the Property is located.

99.     Mr. Chapman confirmed that the existing roadways would accommodate any traffic generated by Vision Warriors' use of the Property.

100.    Mr. Chapman explained that the first parcel of the Property "is in the suburban growth area and future land uses envisioned in this area include residential, as well as semi-public and *institutional uses*." [emphasis added].

101.   Mr. Chapman explained that the second parcel is located in suburban growth and suburban living and is compatible with both commercial and residential development and that "future land uses in this character area are envisioned to be residential, recreational and parks, as well as semi-public and *institutional uses*." [emphasis added].

102.   At this hearing, approximately eleven (11) people signed up to speak in opposition to Vision Warriors' zoning applications. Several neighbors speaking in opposition again expressed unfounded concerns based solely upon the fact that Vision Warriors houses men in recovery from drug and alcohol addiction.

103.   During this meeting, no evidence was presented to support that Vision Warriors' more than fifteen (15) months use of the Property had disturbed any neighbors, created parking or traffic issues, and/ or was inconsistent with the residential use of the neighborhood.

104.   The Defendant County's Planning Commission specifically referenced and acknowledged the letters, emails and correspondence of opposition it had received from neighbors regarding Vision Warriors' proposed uses of the Property.

105.   On March 5, 2019, all but two members of the Defendant County's Planning Commission voted to recommend denial of both land use applications.

106.   Notably, the only two members of the Planning Commission to cast a vote in favor of one of Plaintiff's land use applications are the same two members that accepted Plaintiff's invitation to visit and tour the Property.

107.   On April 16, 2019, Vision Warriors' applications for both a special use permit and for rezoning were heard by Defendant County's Board of Commissioners.

108.   Prior the scheduled public meeting, Defendant County's Board of Commissioners were again warned that their actions in denying Vision Warriors' application for a special use permit and/or in the alternative, application for rezoning, would violate federal laws, including but not limited to the FHA, ADA and RLUIPA.

109.   On April 16, 2019, the Defendant County's Board of Commissioners voted unanimously to deny both of Vision Warriors' land use applications.

110.   On July 16, 2019, the Defendant County's Board of Commissioners conducted a hearing on the administrative appeal (filed on July 11, 2018) and again voted unanimously to deny all claims asserted by Vision Warriors, including without limitation Vision Warriors' assertion that its use of the Property is allowed and protected as a legal conforming or nonconforming use, that Vision Warriors has a

vested right in such use, and that Cherokee County is barred by the doctrine of estoppel from prohibiting such use.

111.   Defendants' conduct has frustrated the mission of Vision Warriors and constitutes a threat of irreparable harm if Defendants are permitted to continue with their discriminatory conduct against Plaintiff.

## COUNT I
## Fair Housing Act
## (42 U.S.C. § 3604, *et seq*)

112.   Paragraphs 1 through 111 are incorporated by reference as if set forth fully herein.

113.   The Fair Housing Act guarantees fair housing to individuals with disabilities and makes it unlawful to "discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap." 42 U.S.C. § 3604(f)(1).

114.   Plaintiff constitutes a person with a handicap under the Fair Housing Act, 42 U.S.C. § 3602(d), (h) and (i), and has suffered damages, economic loss, and loss of civil rights as a result of Defendants' conduct.

115.   Plaintiff's use of the Property constitutes a "dwelling" within the meaning of the Fair Housing Act, 42 U.S.C. § 3602(b).

116.   The Defendants violated Plaintiff's rights under the Fair Housing Act, by refusing to allow Plaintiff's continued use of the Property, and enforcing zoning rules and policies in a discriminatory manner.

117.   The Defendants violated Plaintiff's rights under the Fair Housing Act by failing to make reasonable accommodations in the zoning code to afford the Plaintiff an equal opportunity to use and enjoy the Property.  In fact, the Defendants specifically modified the Cherokee County Zoning Ordinance for the purpose of denying Vision Warriors the ability to conduct its uses of the Property, including without limitation, housing disabled persons of a protected class.

118.   The effect of Defendants' actions is to deny zoning approval to Plaintiff and deny needed housing to those receiving assistance and support from Plaintiff for recovery from alcohol and drug addiction.

## COUNT II
## Violation of Americans With Disabilities Act
## (42 U.S.C. § 12102, *et seq*)

119. Paragraphs 1 through 111 are incorporated by reference as if set forth fully herein.

120.   The ADA requires that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the

benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by such entity." 42 U.S.C. § 12132.

121.   The Plaintiff is associated with and provides housing to people with disabilities as defined in 42 U.S.C. § 12102(2) and is a covered entity.

122.   The Defendant Cherokee County is a public entity under 42 U.S.C. § 12131(1).

123.   42 U.S.C. § 12202 provides: "[a] State shall not be immune under the eleventh amendment to the Constitution of the United States from an action in [1] Federal or State court of competent jurisdiction for a violation of this chapter. In any action against a State for a violation of the requirements of this chapter, remedies (including remedies both at law and in equity) are available for such a violation to the same extent as such remedies are available for such a violation in an action against any public or private entity other than a State."

124.   The actions of the Defendants to revoke zoning approval, amend the zoning ordinance to require Plaintiff to submit to a subjective land use process, and then deny zoning approval to Plaintiff violates Plaintiff's rights and those seeking its assistance under the Americans With Disabilities Act, 42 U.S.C. §12132 *et seq.* and the regulations promulgated thereunder by, among other ways:

    a.  Using land ordinances and methods of administering those ordinances for the purpose of subjecting Vision Warriors to discrimination on the basis of their handicap;

    b.  denying housing and attempting to make housing unavailable to those seeking assistance from Plaintiff because of their disability;

    c.  denying Plaintiff and its residents an equal opportunity to participate in the benefits of services, programs, or activities of a public entity.

## COUNT III
## Violation of the Religious Land Use and Institutionalized Persons Act of 2000
## "Substantial Burden on Religious Exercise"
## (42 U.S.C. § 2000cc(a))

125.  Paragraphs 1 through 111 are incorporated by reference as if set forth fully herein.

126.  The Defendants constitute a "government" pursuant to 42 U.S.C. § 2000cc-5(4)(A)(i),(ii).

127.  Vision Warriors constitutes a "religious assembly or institution" pursuant to 42 U.S.C. § 2000cc(a)(1).

128.  "Religious exercise" is defined as "any exercise of religion, whether or not compelled by, or central to, a system of religious belief" pursuant to 42 U.S.C. §

2000cc-5(7)(A), and "the use, building or conversion of real property for the purpose of religious exercise shall be considered to be religious exercise of the person or entity that uses or intends to use the property for that purpose." 42 U.S.C. §2000cc-5(7)(B).

129.   Defendants' rescission of both zoning approval previously granted by Defendant County's Zoning Administrator and the tenant occupancy permit, amendment of the zoning code to prohibit Vision Warriors' use without special permission, and subsequent denial of Plaintiff's land use applications results in a substantial burden on both Vision Warriors and its members' religious exercise by effectively shutting down Plaintiffs' ministry.

130.   Defendants have deprived and continue to deprive Plaintiff of its right to the free exercise of religion, as secured by the Religious Land Use and Institutionalized Persons Act of 2000, by imposing and implementing land use regulations that place a substantial burden on Plaintiff's religious exercise without a compelling governmental interest.

**COUNT IV**
**Violation of the United States Constitution**
**Equal Protection: Fourteenth Amendment**
**(42 U.S.C. § 1983)**

131.   Paragraphs 1 through 111 are incorporated by reference as if set forth fully herein.

132.   All of the acts of Defendants complained of in this First Amended Complaint were performed under color of State law, ordinance, regulation, custom, and/or usage, and were in violation of the rights, privileges and immunities secured to Plaintiff by the Constitution of the United States and constitute a violation of the provisions of 42 U.S.C. § 1983.

133.   The individual Defendants' actions violated clearly established statutory and constitutional rights of which a reasonable person would have known.

134.   Plaintiff informed Defendants of the clearly established law and of its statutory and constitutional rights on several occasions.

135.   Defendants' conduct in rescinding the zoning determination of its Zoning Administrator only after Vision Warriors purchased the Property and began operating its ministry and only after neighbors expressed unfounded concerns and opposition regarding the group of people Vision Warriors would be ministering to is unconstitutional and Defendants' actions are exclusionary, arbitrary, capricious and without any rational basis.

136.   Defendants' conduct in amending its zoning ordinance to exclude Plaintiff's use of the Property as a dormitory an "open use," so that Plaintiff would have to submit to a laborious and subjective land use process is unconstitutional, exclusionary, arbitrary, capricious and without any rational basis.

137. Defendants' conduct in denying each of Plaintiff's land use applications is unconstitutional in that Defendants' actions are exclusionary, arbitrary, capricious and without any rational basis.

138.   Defendants' conduct in denying Cherokee County Appeal No. 18-10-0001A, including the rescission and refusal to reissue Plaintiff's Tenant Occupancy Permit, is unconstitutional in that Defendants' actions are exclusionary, arbitrary, capricious and without any rational basis and Defendants targeted Plaintiff because of the residents and people they provide assistance to – *i.e.* people suffering from a disability.

139.   The actions of Defendants discriminate between Plaintiff and other similarly situated individuals and property owners, and have deprived and continue to deprive Plaintiff of its right to equal protection of the laws, as secured by the Fourteenth Amendment to the United States.

**COUNT V**
**Violation of the United States Constitution**
**Due Process: Fourteenth Amendment**
**(42 U.S.C. § 1983)**

140.   Paragraphs 1 through 111 are incorporated by reference as if set forth fully herein.

141.   All of the acts of Defendants complained of in this First Amended Complaint were performed under color of State law, ordinance, regulation, custom, and/or usage, and were in violation of the rights, privileges and immunities secured to Plaintiff by the Constitution of the United States and violate the provisions of 42 U.S.C. § 1983.

142.   Defendants' actions in denying Cherokee County Appeal No. 18-10-0001A, including the rescission and refusal to reissue Plaintiff's Tenant Occupancy Permit, were arbitrary, capricious, and without rational basis and constitute an abuse of discretion. Such actions by Defendants are a violation of Plaintiff's rights to due process and violate the Fourteenth Amendment to the Constitution of the United States, and are, therefore, void.

143.   The actions of Defendants amount to a constitutional tort and lack a substantial or rational relationship to the public health, safety, and welfare, and were contrary to the requirements of well-established law.

Defendants' have not articulated any standards or criteria or any objective factual basis to support the denial of Cherokee County Appeal No. 18-10-0001A or the continued rescission and refusal to reissue Plaintiff's Tenant Occupancy Permit.

**COUNT VI**
**Violation of the United States Constitution**
**Taking: Fifth & Fourteenth Amendment**
**(42 U.S.C. § 1983)**

144.   Paragraphs 1 through 111 are incorporated by reference as if set forth fully herein.

145.   Defendants' actions in denying Cherokee County Appeal No. 18-10-0001A, including the rescission and refusal to reissue Plaintiff's Tenant Occupancy Permit, deprives Plaintiff of constitutionally guaranteed property rights without just and adequate compensation and constitutes a violation of the rights and privileges secured to Plaintiff under the Just Compensation Clause of the Fifth Amendment and the Due Process Clause of the Fourteenth Amendment to the Constitution of the United States.

146.   Defendants have caused Plaintiff to expend substantial attorney's fees, expenses of litigation, and costs to vindicate Plaintiff's rights protected under the Fifth and Fourteenth Amendments to the Constitution of the United States and 42 U.S.C. § 1983 and 42 U.S.C. § 1988.

## COUNT VII – MANDAMUS
**(Against Natural Person Defendants in their Individual and Official Capacities)**
**(O.C.G.A. § 9-6-20)**

147.   Paragraphs 1 through 111 are incorporated by reference as if set forth fully herein.

148.   The actions of the Defendants in denying the Plaintiff's right to its use of the Property to house men recovering from drug and alcohol addiction and in denying Cherokee County Appeal No. 18-10-0001A, including the rescission and refusal to reissue Plaintiff's Tenant Occupancy Permit, were exercised outside the scope of their respective constitutional authority.

149.   By denying Cherokee County Appeal No. 18-10-0001A, including the rescission and refusal to reissue Plaintiff's Tenant Occupancy Permit, Defendants and Defendant have violated their duties owed to Plaintiff.

150.    Plaintiff requests that this Court issue a writ of mandamus directing the Defendants to recognize the Plaintiff's use of the Property as a legal use and reissue Plaintiff's Tenant Occupancy Permit.

## COUNT VIII – DECLARATORY JUDGMENT
### (Against Natural Person Defendants in their Individual and Official Capacities)
### (O.C.G.A. § 9-4-2)

151.    Paragraphs 1 through 111 are incorporated by reference as if set forth fully herein.

152.    The actions of the Defendants in denying the Plaintiff's right to its use of the Property to house men recovering from drug and alcohol addiction and in denying Cherokee County Appeal No. 18-10-0001A, including the rescission and refusal to reissue Plaintiff's Tenant Occupancy Permit, were exercised outside the scope of their respective constitutional authority.

153.    Plaintiff is entitled to a declaration from this Court that the Plaintiff's use of the Property is allowed and protected as a legal conforming or nonconforming use, that the Plaintiff has a vested right in such use, and that Cherokee County is barred by the doctrine of estoppel from prohibiting such use.

154.   Plaintiff is entitled to a declaration from this Court that the actions of the Defendants in denying Plaintiff's use of the Property and Cherokee County Appeal No. 18-10-0001A, including the rescission and refusal to reissue Plaintiff's Tenant Occupancy Permit, are invalid and unreasonable in light of the facts and circumstances of this case, are unlawful, arbitrary and capricious, constitute a manifest abuse of discretion, lack any rational basis and violate Plaintiff's right to due process under Article I, Section I, Paragraph I of the Constitution of the State of Georgia of 1983, as amended, and the same are therefore void.

155.   Plaintiff is entitled to a declaration from this Court that the actions of the Defendants in denying Plaintiff's use of the Property and Cherokee County Appeal No. 18-10-0001A, including the rescission and refusal to reissue Plaintiff's Tenant Occupancy Permit, and any other laws and regulations that prohibit or restrict Plaintiff's proposed use, as well as any subsequent action to impose any zoning or other restrictions that restrict the use of the Property to a less intense or less dense use that than those allowed by applicable law (the "Intervening Zoning Restrictions"), violate Plaintiff's right to equal protection under Article I, Section I, Paragraph II of the Constitution of the State of Georgia of 1983, as amended, and the same are therefore void.

156.   Plaintiff is entitled to a declaration from this Court that the actions of the Defendants in denying the Plaintiff's vested right to its use of the Property to house men recovering from drug and alcohol addiction and in denying Cherokee County Appeal No. 18-10-0001A, including the rescission and refusal to reissue Plaintiff's Tenant Occupancy Permit, substantially destroys Petitioner's valuable property rights without prior payment of just compensation as required under Art. I, Sec. III, Para. I of the Constitution of the State of Georgia of 1983, as amended, and O.C.G.A. § 22-1-5 et seq.

## COUNT IX – INJUNCTION
### (Against Natural Person Defendants in their Individual Capacities)
### (O.C.G.A. § 9-5-1, *et seq.*)

157.   Paragraphs 1 through 111 are incorporated by reference as if set forth fully herein.

158.   The actions of the Defendants in denying the Plaintiff's right to its use of the Property to house men recovering from drug and alcohol addiction and in denying Cherokee County Appeal No. 18-10-0001A, including the rescission and refusal to reissue Plaintiff's Tenant Occupancy Permit, were exercised outside the scope of their respective constitutional authority.

159.   Plaintiff has and will continue to suffer irreparable harm as long as the decision regarding Cherokee County Appeal No. 18-10-0001A, including the rescission and refusal to reissue Plaintiff's Tenant Occupancy Permit, and any other laws and regulations that prohibit or restrict Plaintiff's use, continue to encumber the Property.  Plaintiff will also suffer irreparable harm if Defendants impose any Intervening Zoning Restrictions on the Property.

160.   Plaintiff's legal remedies are inadequate.

161.   Plaintiff is entitled to an injunction prohibiting Defendants from prospectively enforcing the current land use restrictions burdening the Property and from imposing any Intervening Zoning Restrictions on the Property. Plaintiff is further entitled to an injunction prohibiting Defendants from enforcing Cherokee County Appeal No. 18-10-0001A, including the rescission and refusal to reissue Plaintiff's Tenant Occupancy Permit.

## COUNT X - ATTORNEY'S FEES AND DAMAGES
### (Applicable Federal law and O.C.G.A. § 13-6-11)

162.   Paragraphs 1 through 111 are incorporated by reference as if set forth fully herein.

163.   The actions of the Defendants in denying the Plaintiff's right to its use of the Property to house men recovering from drug and alcohol addiction and in denying Cherokee County Appeal No. 18-10-0001A, including the rescission and refusal to reissue Plaintiff's Tenant Occupancy Permit, were exercised outside the scope of their respective constitutional authority.

164.   Defendants, both individually and in their official capacities, have been, and are being, stubbornly litigious, have acted in bad faith, and have caused Plaintiff unnecessary trouble and expense as contemplated by O.C.G.A. § 13-6-11, thereby authorizing Plaintiff's recovery of attorney's fees and expenses of litigation.

165.   Plaintiff is therefore entitled by O.C.G.A. § 13-6-11 to an award of its reasonable attorney's fees and expenses incurred in bringing this action.

166.   Plaintiff also is entitled to recover damages, attorney fees and costs as provided by federal statute.

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court grant the following relief:

(a)    A declaration that the Defendants' practice and policy of revoking Plaintiff's zoning approval and Tenant Occupancy Change permit is discriminatory,

illegal and unconstitutional as violating the United States Constitution, the Fair Housing Act, the Americans With Disabilities Act, and the Religious Land Use and Institutionalized Persons Act of 2000;

(b)     A declaration that the Defendants' actions in denying the Plaintiff reasonable accommodations is illegal and unconstitutional as violating the Fair Housing Act, Americans With Disabilities Act, and the United States Constitution;

(c)     The Court grant permanent injunctive relief preventing Defendants from illegally and unconstitutionally applying the County's laws, practices and policies to Plaintiff's use of the Property, including, but not limited to, enjoining Defendants from applying its laws, practices and policies in a manner that substantially burdens Plaintiff's religious exercise, or from applying those laws, practices and policies in a discriminatory manner, and otherwise enjoining Defendants from preventing Plaintiff's exercise of constitutional and statutory rights;

(d)     That the Court reverse the denial of Cherokee County Appeal No. 18-10-0001A, including the rescission and refusal to reissue Plaintiff's Tenant Occupancy Permit;

(e)     That the Court find that the Defendants' actions in connection with the interpretation, application and enforcement of the Cherokee County Zoning Ordinance and the refusal to approve Cherokee County Appeal No. 18-10-0001A, including the rescission and refusal to reissue Plaintiff's Tenant Occupancy Permit, were unlawful, arbitrary and capricious, irrational, a manifest abuse of discretion, unconstitutional, null and void;

(f)     That the Court issue a writ of mandamus directing the Defendants to recognize the Plaintiff's use of the Property as a legal use and reissue Plaintiff's Tenant Occupancy Permit;

(g)     That the Court declare the Plaintiff's use of the Property is allowed and protected as a legal conforming or nonconforming use, that the Plaintiff has a vested right in such use, and that Cherokee County is barred by the doctrine of estoppel from prohibiting such use;

(h)     That the Court declare the actions of the Defendants in denying Plaintiff's use of the Property and Cherokee County Appeal No. 18-10-0001A, including the rescission and refusal to reissue Plaintiff's Tenant Occupancy Permit, are invalid and unreasonable in light of the facts and circumstances of this case, are unlawful, arbitrary and capricious, constitute a manifest abuse of discretion, lack any

rational basis and violate Plaintiff's right to due process under Article I, Section I, Paragraph I of the Constitution of the State of Georgia of 1983, as amended, and the same are therefore void;

(i)     That the Court declare that the actions of the Defendants in denying Plaintiff's use of the Property and Cherokee County Appeal No. 18-10-0001A, including the rescission and refusal to reissue Plaintiff's Tenant Occupancy Permit, violate Plaintiff's right to equal protection under Article I, Section I, Paragraph II of the Constitution of the State of Georgia of 1983, as amended, and the same are therefore void;

(j)     That the Court enjoin Defendants from enforcing Cherokee County Appeal No. 18-10-0001A, including the rescission and refusal to reissue Plaintiff's Tenant Occupancy Permit, from imposing any Intervening Zoning Restrictions on the Property;

(k)     That this Court enter a declaratory judgment and/or an injunction pursuant to 42 U.S.C. § 1983.

(l)     That Plaintiff have and recover compensatory damages in the amount of $300,000.00; together with any special damages arising out of the Defendants' conduct as described in the Complaint;

(m)     That Plaintiff have and recover nominal damages;

(n)     That Plaintiff have and recover attorney fees and costs as provided by federal statute;

(o)     That this Court award Plaintiff its expenses of litigation, including reasonable attorney's fees, pursuant to O.C.G.A. § 13-6-11

(p)     Such other and further relief as this Court may deem just and appropriate.

## DEMAND FOR JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands trial by jury in this action of all issues so triable.

Respectfully submitted,

J. Ethan Underwood
Georgia Bar No. 721901
Miles Hansford & Tallant, LLC
202 Tribble Gap Road, Suite 200
Cumming, Georgia 30040
Ph: 770-781-4100
eunderwood@mhtlegal.com

Abigail Southerland
Abigail Southerland*
Michelle K. Terry*

AMERICAN CENTER FOR LAW & JUSTICE
625 Bakers Bridge Ave, Suite 105-121
Franklin, TN 37067
Ph: (800) 296-4529
Fax: (615) 309-8832
asoutherland@aclj.org
mkterry@aclj.org

Francis Manion*
AMERICAN CENTER FOR LAW & JUSTICE
6375 New Hope Rd.
New Hope, KY 40052
Tel. (502) 549-7020
fmanion@aclj.org

**ATTORNEYS FOR PLAINTIFF**

*Admitted Pro Hac Vice

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 11, 2019, I caused the foregoing document to be filed with the United States District Court for the Northern District of Georgia via the Court's CM/ECF system.


Abigail A. Southerland
Abigail A. Southerland